No. 25-410

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BOATERS RIGHTS ASSOCIATION, an Oregon non-profit corporation; et al.,

*Plaintiffs-Appellants*,

v.

CRAIG WITHEE, in his official capacity as a member of the Oregon State Marine Board; et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Oregon
No. 6:23−cv−00333−MTK
Hon. Mustafa T. Kasubhai

## APPELLANTS' SUPPLEMENTAL BRIEF

| | |
|---|---|
| Jill Gibson | Denise Gale Fjordbeck, AAG |
| Gibson P.C. | Oregon Department of Justice |
| 4248 Galewood Street | 1162 Court Street, NE |
| Lake Oswego, Oregon 97035 | Salem, OR 97301 |
| (503) 505-8998 | (971) 673-1880 |
| jill@gibsonp-c.com | denise.fjordbeck@doj.oregon.gov |
| *Attorney for Plaintiffs-Appellants Boaters Rights Association, Scott Putnam, and Shaloe Putnam* | *Attorney for Defendants-Appellees, Craig Withee, Dax Messett, Jorge Guzman, and Steven Lambert* |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .................................................................................................... 1

ARGUMENT ............................................................................................................ 1

    I.    *Medina* did not change *Gonzaga*'s test for determining whether a federal statute creates rights enforceable through § 1983 ....................... 1

    II.    The Ninth Circuit has already found that the Sport Fish Restoration Act satisfied the *Gonzaga* test for conferring rights enforceable under § 1983. ................................................................................................ 2

    III.    The Sport Fish Restoration Act contains rights-creating language with an unmistakable focus on the benefited class. ............................... 4

# TABLE OF AUTHORITIES

**Cases**

*Blessing v. Freestone*,
    520 U.S. 329 (1997)...............................................................................4

*Buckley v. City of Redding*,
    66 F.3d 188 (9th Cir. 1995) ..................................................................3

*Gonzaga Univ. v. Doe*,
    536 U.S. 273, 122 S. Ct. 2268, 153 L.Ed.2d 309 (2002) ........... 1, 2, 3, 4, 7, 8

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166, 143 S. Ct. 1444 (2023) .................................................... 1, 2, 8

*Medina v. Planned Parenthood South Atlantic*,
    606 U.S. 357 (2025)................................................................. 1, 2, 4, 8

**Statutes**

16 U.S.C. § 777 *et seq.*................................................................. 2, 3, 4, 7, 8, 9

16 U.S.C. § 777g(b)(1)................................................................................4, 7

16 U.S.C. § 777g(g)(1)................................................................................5, 7

16 U.S.C. § 777g(g)(2).....................................................................................5

16 U.S.C. § 777g(g)(3)................................................................................5, 7

16 U.S.C. § 777g(g)(4)................................................................................5, 7

42 U.S.C. § 1396a(a)(23)(A) ..........................................................................8

42 U.S.C. § 1983 .................................................................... 1, 2, 3, 4, 7, 9

**Other Authorities**

129 Cong. Rec. 18691 (daily ed. July 12, 1983) .......................................6

H.R. Rep. No. 133, 98th Cong., 1st Sess. (1983) ......................................5

**Regulations**

50 CFR Part 80.51(b)......................................................................................6

## INTRODUCTION

On February 6, 2026, this court ordered the parties to file simultaneous supplemental briefs addressing the impact, if any, of the Supreme Court's decision in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), on the issues presented in this case. For the reasons discussed below, *Medina* does not impact this case.

## ARGUMENT

**I.**     ***Medina* did not change *Gonzaga*'s test for determining whether a federal statute creates rights enforceable through § 1983.**

*Medina* addressed whether a state's exclusion of Planned Parenthood from the state's Medicaid program violated federal law and whether plaintiffs could enforce the law through 42 U.S.C. § 1983. *Id.* Specifically, the case examined whether Medicaid's any-qualified-provider provision conferred individual rights enforceable through § 1983. After applying the test previously stated in *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) and *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), the Supreme Court concluded that the provision does not clearly confer individual rights. While *Medina* has significant implications for cases in which Medicaid beneficiaries attempt to enforce various Medicaid provisions, it has no impact on cases where *Gonzaga* has already correctly been applied.

*Medina* did not change the test articulated in *Gonzaga* and *Talevski*. In *Medina*, the Supreme Court stated: "As we have explained at length, our decision simply applies the same test this Court applied in *Gonzaga* and again in *Talevski* (with the support of today's dissenters)." *Medina*, 606 U.S. at 385 n.9. Pursuant to *Gonzaga*, "a plaintiff must show that the law in question "clear[ly] and unambiguous[ly]" uses "rights-creating terms." *Medina*, 606 U.S. at 368 (citing *Gonzaga*, 536 U.S. at 284, 290). The statute must display "an unmistakable focus" on individuals like the plaintiff. *Medina* at 368 (citing *Gonzaga* at 284). In *Talevski*, the Supreme Court also applied the *Gonzaga* test and stated: "We have held that the *Gonzaga* test is satisfied where the provision in question is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.' " *Talevski*, 599 U.S. at 183-84 (citing *Gonzaga* at 284, 287) (internal quotes omitted). This is a "demanding bar" that will be cleared only in the "atypical case." *Medina* at 375 (citing *Talevski*, 599 U.S. at 180, 183-84).

II.  **The Ninth Circuit has already found that the Sport Fish Restoration Act satisfied the *Gonzaga* test for conferring rights enforceable under § 1983.**

Courts have already applied *Gonzaga*'s test to the Sport Fish Restoration Act (the "Act") three times, and each time determined that the Act creates enforceable rights. First, the Ninth Circuit found that the Act creates enforceable rights for

recreational boaters in *Buckley v. City of Redding*, 66 F.3d 188 (9th Cir. 1995). The court stated: "Because the Act unambiguously creates an enforceable right, Buckley and the PWIA may bring their section 1983 action unless such an action was expressly or implicitly foreclosed by Congress. Nothing in the Act suggests that Congress expressly intended to foreclose the section 1983 remedy." *Id*. at 192. Although *Buckley* predates *Gonzaga*, the Ninth Circuit's analysis followed the test later announced *Gonzaga*, stating that § 1983 may be used "to remedy infringement of any unambiguously conferred right, privilege, or immunity, so long as Congress has not foreclosed use of the remedy explicitly, or implicitly by imbuing the act in question with its own comprehensive remedial scheme." *Buckley* at 191. The *Buckley* court found that "the Act clearly is intended to benefit the plaintiffs" and "unambiguously creates a right enforceable under section 1983." *Buckley* at 192.

In *Save Our Valley v. Sound Transit*, 335 F.3d 932 (9th Cir. 2003), the Ninth Circuit found for a second time that the Act creates enforceable rights. This case was decided after *Gonzaga* went to great lengths to confirm that *Buckley* correctly decided that the Act created an enforceable right. *Save Our Valley* stated: "The issue in *Buckley* was whether the Federal Aid in Sport Fish Restoration Act—not its enabling regulations—created an enforceable federal statutory right under § 1983. . . . We hold that the Act does confer rights enforceable under section 1983." *Save Our Valley*, 335 F.3d at 941 (citing *Buckley*, 66 F.3d at 189-90).

3

In the instant case, Appellees filed a motion to dismiss arguing that the Act does not confer individual rights enforceable under § 1983. 1-ER-107. The district court denied the motion, finding that the Act "unambiguously confers the right that Plaintiffs seek to enforce under § 1983" and "is clearly intended to benefit recreational boaters." 1-ER-102. The court cited to *Blessing v. Freestone*, 520 U.S. 329 (1997) in its opinion, but ultimately concluded that the Act also satisfied *Gonzaga*'s stricter standards. *See* 1-ER-102.

Because *Medina* did not change the *Gonzaga* test, this Court does not need to re-evaluate whether the Act creates enforceable rights. However, applying *Medina*'s language confirms the Ninth's Circuits earlier conclusions that the Act creates enforceable rights.

**III.    The Sport Fish Restoration Act contains rights-creating language with an unmistakable focus on the benefited class.**

The Act contains the following provisions:

> <u>Each State shall allocate 15 percent of the funds apportioned to it for each fiscal year under section 777c of this title for the payment of up to 75 per centum of the costs of the acquisition, development, renovation, or improvement of facilities (and auxiliary facilities necessary to insure the safe use of such facilities) that create, or add to, public access to the waters of the United States to improve the suitability of such waters for recreational boating purposes.</u>

16 U.S.C. § 777g(b)(1)(emphasis added).

4

> Within 6 months after June 9, 1998, the Secretary, in consultation with the States, shall adopt a national framework for a public boat access needs assessment which may be used by States to conduct surveys to determine the adequacy, number, location, and quality of facilities <u>providing access to recreational waters for all sizes of recreational boats</u>.

16 U.S.C. § 777g(g)(1)(emphasis added).

> Within 18 months after June 9, 1998, each State that agrees to conduct a public boat access needs survey following the recommended national framework shall report its findings to the Secretary for use in the development of a comprehensive <u>national assessment of recreational boat access needs and facilities</u>.

16 U.S.C. § 777g(g)(2)(emphasis added).

> Paragraph (2) does not apply to a State if, within 18 months after June 9, 1998, the Secretary certifies that the State has developed and is implementing a plan that ensures there are and will be <u>public boat access adequate to meet the needs of recreational boaters on its waters</u>.

16 U.S.C. § 777g(g)(3)(emphasis added).

> A State that conducts a public boat access needs survey under paragraph (2) may fund the costs of conducting that assessment out of amounts allocated to it as <u>funding dedicated to motorboat access to recreational waters</u> under subsection (b)(1) of this section.

16 U.S.C. § 777g(g)(4)(emphasis added).

Additionally, legislative history shows that Congress intended to specifically benefit boaters who pay motorboat fuel taxes. *See* H.R. Rep. No. 133, 98th Congress, 1st Sess., pt. 1, 17-18 (1983) ("The intent of [the Amendments] is to

5

ensure that a portion of the funds being derived from the motorboat fuels tax is used for projects that directly benefit the people who pay the tax."); 129 Cong. Rec. 18691 (daily ed. July 12, 1983) ("The boating and sport fishing enthusiasts of our Nation have and will continue to pay these taxes willingly and deserve to see them devoted to appropriate and beneficial purposes.").

The Act's implementing regulations reiterate that states must use funds from the Recreational Boating Program to benefit recreational boaters. The following activities are eligible for the mandated state spending in the Recreational Boating Program:

> (b) *Sport Fish Restoration - Recreational Boating Access subprogram.*
>
> (1) Acquire land for new facilities, build new facilities, or acquire, renovate, or improve existing facilities to <u>create or improve public access to the waters of the United States or improve the suitability of these waters for recreational boating</u>. A broad range of access facilities and associated amenities can qualify for funding, but <u>they must provide benefits to recreational boaters</u>. ''Facilities'' includes auxiliary structures necessary to ensure safe use of recreational boating access facilities.
>
> (2) Conduct surveys to determine the adequacy, number, location, and quality of facilities providing <u>access to recreational waters for all sizes of recreational boats</u>.

50 CFR Part 80.51(b) (emphasis added).

The Act's provisions clearly and unambiguously, and repeatedly, state that recreational boaters shall have access to certain waters for recreational boating. Indeed, the right is not established in a single provision, but throughout the Act it reiterates the rights of recreational boaters. The Act is phrased in terms of the persons benefited and clarifies that states are not merely required to provide certain facilities, but must take into account individual boaters "access needs" and "for all sizes of recreational boats." 16 U.S.C. § 777g(g)(1). Congress did not just direct states to allocate funds to provide public access to U.S. waters, but the access must "improve the suitability of such waters for recreational boating purposes." 16 U.S.C. § 777g(b)(1). Congress is clearly and unmistakably "ensur[ing] there are and will be public boat access adequate to meet the needs of recreational boaters on its waters." 16 U.S.C. § 777g(g)(3). Congress also clarifies that the funding is "dedicated" to recreational boaters. 16 U.S.C. § 777g(g)(4). The Act repeatedly focuses on recreational boaters and leaves no doubt that the statute benefits that class of individuals. And the right to access for "all sizes of recreational boats" - not just most sizes - shows that the focus is on individual needs, not aggregate needs. This is the type of rights-creating language required by *Gonzaga*.

Regarding the remainder of the test, Appellees do not even assert that the Act contains a provision precluding a cause of action under § 1983 or that the Act contains an incompatible enforcement scheme. *See* 1-ER-103. And the Act does

7

not contain a remedial scheme that forecloses private remedies. Thus, pursuant to *Gonzaga*, *Talevski*, and *Medina*, Appellants may enforce their statutory rights through § 1983.

The provision in *Medina* stands in stark contrast to the Act's provisions. The any-qualified-provider provision states that Medicaid plans must "provide that . . . any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services." 42 U.S.C. §1396a(a)(23)(A). This provision appears just a single time and is among 87 other provisions, thus any intent to create a right is neither clear nor unmistakable. *See Medina*, 606 U.S. at 379. Also, the provision carves out exceptions, which shows it does not confer individually enforceable rights. *See Medina* at 379 ("for that would mean Congress sought to convey a right against the States in one breath but let States control its scope in the next"). Additionally, the Medicaid Act only requires states to "comply substantially" with the any-qualified-provider provision, which negates any individual focus. *Medina* at 379.

The court was also concerned about "what it would mean if § 1396a(a)(23)(A) did create an individually enforceable right. Many other Medicaid plan requirements would likely do the same." *Medina* at 380. According to the Centers for Medicare & Medicaid Services, approximately 70 million

individuals are enrolled in Medicaid.[1] A finding that the any-qualified-provider provision creates enforceable rights would certainly contribute to the "deluge of § 1983 filings numbering in the tens of thousands each year." *Medina* at 390 (Thomas, J., concurring)(internal quotations omitted). In contrast, the case at hand is the only case filed in the last 25 years that attempts to enforce rights created by the Sport Fish Restoration Act. In light of the clear and unmistakable rights created in the Act for recreational boaters, this court should allow Appellants to enforce their rights through this § 1983 action.

Date:  February 27, 2026

                                                   GIBSON P.C.

                                                   */s/ Jill O. Gibson*
                                                   Jill O. Gibson, OSB # 973581

                                                   *Attorneys for Plaintiffs-Appellants Boaters Rights Association, Scott Putnam, and Shaloe Putnam*

---

[1] Centers for Medicare & Medicaid Services, *November 2025 Medicaid & CHIP Enrollment Data Highlights*, www.medicaid.gov/medicaid/national-medicaid-chip-program-information/medicaid-chip-enrollment-data/october-2025-medicaid-chip-enrollment-data-highlights (last visited Feb. 25, 2026).

9

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-410

I am the attorney or self-represented party.

**This brief contains 1,997 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[✓] complies with the length limit designated by court order dated February 6, 2026.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature /s/ Jill O. Gibson     Date: February 27, 2026

**A-1**

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Service on Case Participants Who Are Registered for Electronic Filing:

[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

Service on Case Participants Who Are NOT Registered for Electronic Filing:

[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

Denise Gale Fjordbeck, AAG
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301
(971) 673-1880
denise.fjordbeck@doj.oregon.gov

Attorney for Defendants-Appellees Craig Withee, Dax Messett, Jorge Guzman, and Steven Lambert

Description of Document(s) (required for all documents):

APPELLANTS' SUPPLEMENTAL BRIEF

Signature /s/ Jill O. Gibson     Date: February 27, 2026